[No. 2296.]

TONY CLEMENT v. THE STATE.

1. INDICTMENT—EVIDENCE.—It must not only be alleged in the indictment, but it must appear from the proof, that the offense was committed anterior to the presentment of the indictment.
2. PRACTICE.—BILLS OF EXCEPTION are required by the Statute (Rev. Stats., Art. 1363), to be reduced to writing and presented to the trial judge for his action during the term and within ten days after the conclusion of the trial. The duty of filing the same during the term devolves upon the judge.
3. SAME—THEFT.—DECLARATIONS of the defendant's father in relation to the stolen article, made in the presence of the defendant and acquiesced in by him, are admissible in evidence against him.

APPEAL from the District Court of Lamar. Tried below before the Hon. D. H. Scott.

The conviction was for the theft of an overcoat of the value of twenty dollars, and the punishment assessed against the appellant was a term of two years in the penitentiary.

R. H. Evens was the first witness for the State. He testified, in substance, that in the fall of 1885, he occupied apartments at the boarding house of Mrs. John Harmon, in the city of Paris, Lamar County, Texas. The witness's overcoat, for which five or six months before he had paid the sum of thirty-five dollars, was taken from his possession during that fall. Witness had left it hanging against the wall in the hallway of Mrs. Harmon's house. He missed it on the same day that it was taken, procured a search warrant, and, about dark on the evening of the same day, in company with Constable Nelson, he repaired to the house of the defendant's father. As witness and Nelson approached the house, they saw some one standing at the side of the house wearing a long, dark overcoat. Witness and Nelson went into the house, where they were soon joined by the defendant, who then had no overcoat on. Defendant said that he had been out to his father's cow lot. Nelson and defendant then left the house to hunt for the overcoat, and found it in the weeds in the yard, about forty yards from the house. The coat had been worn but few times, and was worth at least thirty dol-

lars when it was taken.   It belonged to witness, and  was taken from his possession without his consent.

Cross examined, the witness testified that there were several other parties, men and boys, at defendant's father's house when he and Nelson arrived.   Witness did not know that defendant was the party whom he saw standing at the side of the house wearing an overcoat when he and Nelson reached the house.

Constable W. D. Nelson testified, for the State, that he went with Evens to the house of defendant's father to look for the overcoat.   They saw some one wearing an overcoat in the yard as they approached the house, but witness could not say that that party was the defendant.   Defendant came into the house soon after the arrival of witness and Evens.   Witness told defendant's father that he was in search of an overcoat, which he described.   The defendant's father, in the presence of defendant, replied:   "That coat is here; Tony knows where it is, and I will make him go with you and get it."   Defendant then led witness to a point in the yard where the coat was found in some weeds.   Witness then arrested the defendant.

Mrs. John Harmon testified, for the State, that Mr. Evens was boarding at her house at the time his overcoat was stolen.   He left his overcoat hanging in the hall, and missed it about 3 o'clock in the afternoon on the day it was stolen.   Defendant was cutting wood at witness's house on that day, and was seen by witness, at various times, both at the front and back doors of the hall.   He finished his job and left about three o'clock in the afternoon.

Mr. Hacker and Mr. Ownby testified, for the State, that the overcoat stolen from Evens was a tailor-made overcoat, and was worth at least twenty-five dollars.   The State closed.

Jennie Meyers, a dealer in second-hand clothing in Paris, Texas, testifying for the defense, said that no clothes having been worn once or twice would bring fifty per cent of their original cost in the market.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. The indictment upon which this conviction is based was presented in court and filed April 4, 1885, and alleges the offense to have been committed on or about November 20, 1884. It was proved on the trial, as shown by the statement of facts before us, that the offense of which the defendant stands convicted was committed in the fall of 1885, one year subsequent to the date of the commission of the offense alleged in the indictment, and subsequent also to the date of the presentment and filing of the indictment. This discrepancy between the indictment and the proof is the result, perhaps, of carelessness in the preparation of the statement of facts; but even if it be a clerical mistake merely, it is beyond the power of this court to correct or avoid it. It must not only be alleged in the indictment, but it must be proved that the offense charged was committed anterior to the presentment of the indictment. (Code Crim. Proc., Art. 420; McCay v. The State, 3 Texas Ct. App., 399; Shoefercater v. The State, 5 Texas Ct. App., 207; Roblis v. The State, 5 Texas Ct. App., 346; Dovalino v. The State, 14 Texas Ct. App., 324.) Because of this error in the conviction, the judgment must be reversed and the cause remanded.

There are several bills of exception in the record which were not filed within ten days after the conclusion of the trial, but which were presented to the judge for his action within ten days after the trial, and were signed by him and filed before the adjournment of the court. It is insisted by the Assistant Attorney General that these bills cannot be considered because not filed within ten days after the conclusion of the trial, and in support of his position he cites Cummins v. The State, 12 Texas Court of Appeals, 121; Harrison v. the State, 16 Texas Court of Appeals, 325, and Morris v. The State, 17 Texas Court of Appeals, 660. Upon an examination of those cases, we find that the position of the Assistant Attorney General is apparently supported by the opinions in Cummins v. The State and Morris v. The State, but not by the opinion in Harrison v. The State. We think the rule as stated in Cummins v. The State and Morris v. The State, supra, is not warranted by the statute, and is therefore incorrect.

It is only required by the statute that the party desiring the bill of exception shall reduce the same to writing, and present it to the judge for his action during the term and within ten days after the conclusion of the trial. (Rev. Stats., Art. 1363.) When the party has presented the bill to the judge, he has performed all that the statute requires of him. He is not required

to have it filed. It is made the duty of the judge to file the same with the clerk during the term. (Rev. Stats., Art. 1364.) In the case before us the bills of exception were presented to the judge within ten days after the conclusion of the trial, but were not filed within said ten days. They were filed, however, during the term. We hold that the bills of exception are properly before this court, and are entitled to be considered.

Defendant's first bill of exception presents the question of the admissibility of the declaration of defendant's father in relation to the stolen coat. These declarations or statements were made in the presence and hearing of the defendant, and were clearly admissible as original testimony, as much so as if they had been made by the defendant himself.

Defendant's second bill of exception is a general one to the entire charge of the court. We have examined the charge carefully, and find no error in it. It fully and correctly presents to the jury all the law of the case, and is not, in our opinion, when viewed with reference to the facts, objectionable in any respect.

We have found no error in the conviction except the proof of the time of the commission of the offense, and for this error alone, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered October 16, 1886.